```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA
-------------------------------------------------------------------------X
KEVIN HOOT,
                                                        Civil Action No.
                        Plaintiff,


SNI COMPANIES; STAFFING NOW, INC.;
LENOX CORPORATION;                                      JURY TRIAL
CHRISTOPHER PINTO, individually,                        DEMANDED
KIMBERLY LOFTUS-WAGNER, individually,
KAREN WOLF individually; and,                           COMPLAINT
DIANE MILLER, individually.

                        Defendants.
-------------------------------------------------------------------------X
```

Plaintiff, KEVIN HOOT, as and for his Complaint against the above Defendants respectfully alleges upon information and belief as follows:

## NATURE OF THE CASE

1. Plaintiff complains pursuant to American with Disabilities Act of 1990, 42 U.S.C. § 12101 *et. seq* ("ADA"), and the Pennsylvania Human Relations Act, as amended, 43 P.S. §§ 951, *et. seq.* ("PHRA")*,* and seeks damages to redress the injuries Plaintiff suffered as a result of unlawful discrimination, retaliation, and termination by Defendant solely due to his disability.

## JURISDICTION AND VENUE

2. This Court has jurisdiction Pursuant to 42 U.S.C. §12101 *et*. *Seq*.; 29 U.S.C. §2617; 28 U.S.C. §1331, §1343 and supplemental jurisdiction thereto.

3. This actions involves a Question of Federal Law under American with Disabilities Act of 1990, 42 U.S.C. § 12101 *et. seq*.

4. Venue is proper in this district based upon the fact that Plaintiff was employed by Defendants within the County of Bucks, Commonwealth of Pennsylvania, within the Eastern District of Pennsylvania. Additionally, the events took place in Bucks County, Pennsylvania within the Eastern District of Pennsylvania, and that Plaintiff lives in the County of Philadelphia, in the Commonwealth of Pennsylvania.

## **PARTIES**

5. Plaintiff KEVIN HOOT (hereinafter also referred to as Plaintiff and "HOOT") is an individual male who is a citizen of the Commonwealth of Pennsylvania.

6. At all times material, Defendant SNI COMPANIES (hereinafter Defendant and "SNI") is a foreign business corporation duly existing under the laws of the state of Delaware.

7. Defendant SNI has a corporate headquarters located at 4500 Westown Parkway, Suite 120, West Des Moines, IA 50266.

8. Defendant SNI's website says, "Our job seekers and clients are the cornerstones of our business; we make it a top priority to ensure both parties are satisfied. Our objective is to get to know each professional individually-your unique talents and career goals."

9. Defendant STAFFING NOW, INC. (hereinafter referred to as Defendant and "STAFFING NOW") is a foreign business corporation duly existing under the laws of the state of Delaware.

10. Defendant STAFFING NOW has a corporate headquarters located at 1 Park Plaza, Steuart Tower, 24th Floor, San Francisco, CA 94105.

11. Defendant SNI is a parent company of Defendant STAFFING NOW. The two corporations operate a staffing firm located at 1601 Market Street, Suite 2250, Philadelphia, PA 19103

12. Defendant SNI and Defendant STAFFING NOW will hereinafter collectively be referred to as Defendant and "SNI."

13. Defendant LENOX CORPORATION (hereinafter referred to as Defendant and "LENOX") is a business corporation duly existing under the laws of the state of Delaware.

14. Defendant LENOX's website says, "We are continually looking for high-caliber employees who will take pride in working for Lenox and upholding its rich heritage."

15. Defendant LENOX operates a call center located at 1414 Radcliffe Street, Floor #2, Bristol, PA 19007.

16. At all times material Defendants LENOX and SNI were joint and single employers of Plaintiff.

17. At all times material Defendant CHRISTOPHER PINTO (hereinafter referred to as Defendant and "PINTO") is an employee of Defendant SNI.

18. At all times material Defendant PINTO is employed as a Staffing Specialist for Defendant SNI.

19. At all times material Defendant KIMBERLY LOFTUS-WAGNER (hereinafter referred to as Defendant and "KIMBERLY") is an employee of Defendant LENOX.

20. At all times material Defendant KIMBERLY is employed as a Call Center Manager for Defendant LENOX.

21. At all times material Defendant KAREN WOLF (hereinafter referred to as Defendant and "WOLF") is an employee of Defendant LENOX.

22. At all times material Defendant WOLF is employed as a Senior Human Resources for Defendant LENOX.

23. At all times material Defendant WOLF held supervisory authority over Plaintiff.

24. At all times material Defendant DIANE MILLER (hereinafter referred to as Defendant and "MILLER") is an employee of Defendant LENOX.

25. At all times material, Defendant MILLER is employed as a Call Center Supervisor for Defendant LENOX.

## MATERIAL FACTS

26. In or around December 2013, Plaintiff was diagnosed with Severe anxiety, depression, Bi-Polar disorder, and PTSD.

27. Plaintiff had previously been diagnosed with ADHD in or around 1996.

28. Generalized Anxiety Disorder recognized by the DSM-5 includes increased worry of anticipated disasters and concern relating to money, health, family, work and other personal issues. Common symptoms include restlessness or feeling on edge, fatigue, difficulty concentrating or mind going blank, irritability, muscle tensions, and sleep disturbance.

29. Bi-Polar Disorder, formerly known as manic depression, causes extreme mood swings that include emotional highs (mania or hypomania) and lows (depression). Plaintiff and those who suffer from bi-polar disorder may feel sad or hopeless and lose interest or

pleasure in most activities. These mood swings can shift and cause an afflicted person to feel euphoric and full of energy.

30. Symptoms of PTSD include overwhelming anxiety, mood swings, difficulty sleeping, feeling anxious or jumpy, emotional numbness and avoidance of social settings, re-experiencing the trauma through recollection of events due to triggers or flashbacks.

31. Plaintiff explained that these physiological conditions affect his major life functions by manifesting in panic and anxiety attacks, an inability to be in social settings an inability to complete daily activities such as getting out of bed, bathing, eating.

32. Plaintiff at times has mood changes and an extreme sense of fear. Also, when Plaintiff takes his medication for these symptoms, he is unable to drive and experiences extreme fatigue.

33. In or around the second week of November 2015, Defendant PINTO interview Plaintiff for placement opportunities available through Defendant SNI.

34. During the interview, Defendant PINTO asked Plaintiff about an extended period of unemployment that was evident on Plaintiff's resume.

35. Plaintiff explained his psychological disability, symptoms, and treatments to Defendant PINTO. Plaintiff further explained that he was receiving treatment and medication for this condition, so Plaintiff did not anticipate it affecting his current ability to work.

36. Defendant PINTO told Plaintiff that there was a manager position available in Defendant LENOX's call center and discussed scheduling a time for Plaintiff to interview for that position.

37. Approximately one week later, Plaintiff interviewed with Defendant KIMBERLY at Respondent LENOX call center.

38. During the interview, Defendant KIMBERLY explained that the manager position had been filled, but there were full time opportunities available in the call center.

39. Plaintiff remained interested in the opportunity and continued with the interview.

40. During the interview, Plaintiff told Defendant KIMBERLY about his anxiety, depression, bi-polar, PTSD and ADHD.

41. Throughout the interview process, Plaintiff fully informed Defendants SNI and Defendants LENOX about his disability.

42. On or around November 23, 2015, Plaintiff began working as a contract employee for Defendant LENOX in the call center.

43. Plaintiff successfully made it through his first week of work without suffering any issues or setbacks due to his disability.

44. In or around the second week of December 2015, during his second week of employment, Plaintiff began to miss work due to his disability.

45. Approximately, Plaintiff suffered a severe panic attack and had to leave work early to go to the emergency room.

46. Plaintiff informed Defendant MILLER that he was unable to control his anxiety, which caused a panic attack and required Plaintiff to seek emergency medical treatment.

47. In or around the beginning of January 2016, Plaintiff suffered another extreme anxiety attack at work. The attack was so severe that Plaintiff had to be transported by ambulance from Defendant LENOX's call center.

48. While Plaintiff waited for the ambulance to arrive, he was questioned by Defendant WOLF about the nature of Plaintiff's condition and the medications used to treat the condition.

49. Plaintiff again described fully the nature of his disability.  Defendant WOLF began belittling Plaintiff for "wasting her time."

50. Later that day, the treating physician in the Emergency Room gave Plaintiff a note fully clearing Plaintiff to return to work.

51. In retaliation for Plaintiff's disability, Defendant LENOX refused to accept the doctor's note.

52. Defendant LENOX told Plaintiff that in order to return to work, a note from Plaintiff's primary care physician was required.  Defendant LENOX required that the note provide a detailed account of his medical diagnosis and his current medical status. Defendant LENOX informed Plaintiff that he was prohibited from returning to work without the requested letter.

53. At the time of the severe panic attack, Plaintiff was a new resident to Philadelphia, Pennsylvania and did not yet have a primary care physician.  It took Plaintiff approximately one week to get an appointment with a doctor to obtain the required note clearing Plaintiff to return to work.

54. Upon his first visit, the primary care physician who treated Plaintiff provided him a note clearing him to return to work, but refused to disclose Plaintiff's full medical condition because it was a HIPAA violation.

55. In or around mid-January, 2016, Plaintiff meet with the Defendant WOLF.  During this meeting, Plaintiff told Defendant WOLF that he felt he was being singled out due to his condition and the fact that he had to be taken by ambulance because of his panic attack.

56. Plaintiff further explained that he felt this way, because there was no policy in the handbook requiring such a detailed doctor's note when an employee missed work due to illness.

57. Plaintiff thereafter requested a reasonable accommodation based on his disability. Plaintiff asked Defendant WOLF if he could miss work from time to time when his conditions were extreme so as not to disrupt the environment at LENOX.

58. Defendant WOLF refused to accommodate Plaintiff's request.  Further, Defendant WOLF belittled Plaintiff for bringing, "poor workmanship to their company.".

59. Defendant WOLF denied Plaintiff a reasonable accommodation despite the fact that he was consistently performing at set performance rates.

60. Approximately one week later, Plaintiff again missed work due to his disability.

61. On or around January 27, 2016, Defendant PINTO called and told Plaintiff that he was not allowed to return to Defendant LENOX.

62. Defendant LENOX wrongfully, and illegally terminated Plaintiff due to his disability and his reasonable request for an accommodation.

63. Defendants wrongfully terminated Plaintiff due to his disability and in retaliation for Plaintiff's request for a reasonable accommodation.

64. As a result of Defendants' actions, Plaintiff felt extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

65. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income, the loss of salary, bonuses, benefits and other compensation which such employment entails.

66. Plaintiff also suffered future pecuniary losses, emotional pain, humiliation, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

67. Furthermore, Plaintiff has experienced severe emotional and physical distress.

68. As Defendants' conduct has been malicious, willful, outrageous, and was conducted with full knowledge of the law, Plaintiff demands Punitive Damages against Defendants.

69. The above are just some examples of some of the discrimination and retaliation to which Defendants subjected Plaintiff .

70. The Defendants have exhibited a pattern and practice of not only discrimination but also retaliation.

### AS A FIRST CAUSE OF ACTION
### FOR DISCRIMINATION
### UNDER THE AMERICANS WITH DISABILITIES ACT

71. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

72. Plaintiff claims Defendant violated the Americans with Disabilities Act of 1990 (Pub. L. 101-336) (ADA), as amended, as these titles appear in volume 42 of the United States Code, beginning at section 12101.

73. Title 42 of the Americans with Disabilities Act of 1990, Chapter 126, Subchapter I, Section 12112, Discrimination [Section 102] states: "(a) General rule. - No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

74. Defendant engaged in an unlawful discriminatory practice by discriminating against the Plaintiff because of his disability.

75. Plaintiff has been damaged as set forth herein.

### AS A SECOND CAUSE OF ACTION
### FOR RETALIATION
### UNDER THE AMERICANS WITH DISABILITIES ACT

76. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

77. SEC. 12203. [Section 503] states, "(a) Retaliation. - No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.

78. Defendant violated the above and Plaintiff suffered numerous damages as a result.

### AS A THIRD CAUSE OF ACTION
### FOR DISCRIMINATION UNDER STATE LAW
### (Not Against Individual Defendants)

79. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

80. The PHRA § 955 provides that it shall be an unlawful discriminatory practice: "(a) For any employer because of the race, color, religious creed, ancestry, age, sex, national origin or non-job related handicap or disability or the use of a guide or support animal because of the blindness, deafness or physical handicap of any individual or independent contractor, to refuse to hire or employ or contract with, or to bar or to

discharge from employment such individual or independent contractor, or to otherwise discriminate against such individual or independent contractor with respect to compensation, hire, tenure, terms, conditions or privileges of employment or contract, if the individual or independent contractor is the best able and most competent to perform the services required."

81. Defendants engaged in an unlawful discriminatory practice by discriminating against the Plaintiff because of his race.

82. Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of the PHRA § 955.

## AS A FOURTH CAUSE OF ACTION
## FOR DISCRIMINATION UNDER STATE LAW
## (Not Against Individual Defendants)

83. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

84. PHRA § 955(d) provides that it shall be an unlawful discriminatory practice: "For any person, employer, employment agency or labor organization to discriminate in any manner against any individual because such individual has opposed any practice forbidden by this act, or because such individual has made a charge, testified or assisted, in any manner, in any investigation, proceeding or hearing under this act."

85. Defendants engaged in an unlawful discriminatory practice by discharging, retaliating, and otherwise discriminating against the Plaintiff because of Plaintiff's opposition to the unlawful employment practices of Plaintiff's employer.

### AS A FIFTH CAUSE OF ACTION
### FOR DISCRIMINATION UNDER STATE LAW
### (Not Against Individual Defendants)

86. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

87. PHRA § 955(e) provides that it shall be an unlawful discriminatory practice: " For any person, employer, employment agency, labor organization or employee, to aid, abet, incite, compel or coerce the doing of any act declared by this section to be an unlawful discriminatory practice, or to obstruct or prevent any person from complying with the provisions of this act or any order issued thereunder, or to attempt, directly or indirectly, to commit any act declared by this section to be an unlawful discriminatory practice.

88. Defendants engaged in an unlawful discriminatory practice in violation of PHRA § 955(e) by aiding, abetting, inciting, compelling and coercing the discriminatory conduct.

### JURY DEMAND

Plaintiff requests a jury trial on all issues to be tried.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants, jointly and severally, in an amount to be determined at the time of trial plus interest, including but not limited to all emotional distress, back pay and front pay, punitive damages, liquidated damages, statutory

damages, attorneys' fees, costs, and disbursements of action; and for such other relief as the Court deems just and proper.

Dated: Philadelphia, Pennsylvania
November 9, 2017

                                        DEREK SMITH LAW GROUP, PLLC
                                        *Attorneys for Plaintiffs*

By: _____
      Samuel C. Wilson, Esq.
      1845 Walnut Street, Suite 1600
      Philadelphia, Pennsylvania 19103
      (215) 391-4790